Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned in order to state a claim against a foreign sovereign. Under the commercial activity exception, two things have to be established, that the claim is based upon commercial activity and that there be commercial activity carried on in the United States by the sovereign. Fortunately, there's a lot of guidance in the case law as to what based upon means and unfortunately, I've not been able to find too much that says what carried on means. We know in this case that the URail group was formed in 2001, but they had been selling URail passes since 1959. How commerce was carried on in 1959 and then in 1976 when the Foreign Sovereign Immunity Act became law, later on with the internet, has changed dramatically. In support of the conclusion that the railway carried on commercial activity, there is no dispute as to whether the pass bound the railway to provide the carriage and there is not a dispute that the rail pass experts had actual authority to sell the pass. Do you concede that you have to demonstrate that the rail pass experts had actual authority? Therein lies the question. Where does it have to come from? Must it come from the railway or can it come from your rail group? But there has to be actual authority somehow established, right? Absolutely. And we know there was actual authority here because when Carol went to purchase the sleeper upgrade and presented her rail pass voucher, it had RPE on it, which is rail pass experts, and they sold her the Cowcheck upgrade, which they could not have done unless she had a pass that was issued by someone who had the actual authority to issue it. So I am suggesting that actual authority is not... I'm not trying to understand the mechanics. It's been many years since I've bought a rail pass. Me too, you are. So, I mean, if I go to the movie theater and I buy a ticket and I then sell it to a friend, unless I can go to the theater and I sell it to a friend, they show up with a ticket to the theater, it's fine. They can come in and I'm not an authorized agent for the theater. Is there something different about URL passes? Are these more than just retailers selling a ticket, a voucher that anybody could sell? Do you have to be authorized somehow? According to the URL group website, yes. As the URL group advertised, URL passes are available from our wide network of sales agents worldwide. Well, that's what the theater might say. You know, you go to Ticketmaster and buy a ticket, but that doesn't mean that you can only buy it from there. What is it in the record to show agency and actual authorization? Agency and actual authorization, I think, are the same. Because if you have actual authority, it must have an agency. Well, that's what I'm asking. All right. What is it to show there was actual authorization? How do we know that what these people call the sold the ticket in the United States, that they weren't just, they bought them on the wholesale market and sold them? They weren't just sellers, unauthorized sellers? If they're an authorized seller, they have actual authority to sell the pass. Unauthorized. I'm sorry. Unauthorized. How do we know they're not unauthorized sellers? In the motion to dismiss, the railway never suggested that they didn't have the authority. In fact, do they have to have authority in order to sell the tickets? For jurisdiction. No, no. I mean, to sell it. Let's say I buy a U of A pass. I decide I can't use it. My trip gets canceled, and it turns out my neighbor says, oh, you know, I'm going to Europe myself. I'll buy your pass from you. Do you have to be an authorized seller to sell it? I think now we're talking about down the chain of issuance. I think the issue here is we have a contract of carriage. I don't think there's any denying that. The pass was a contract of carriage. The railway acknowledges that this pass allowed her to board the train. The contract of carriage was made by and through the URail group and its network of sales agents worldwide. So is there some contract between rail pass experts and the URail group? Is there something that authorizes them to sell this pass? Unfortunately, at this stage, that type of discovery is- Jurisdictional discovery? No. What we have is we have the acknowledgment by the declarant. The rail pass experts may be presumably a subagent of a general sales agent accredited by the URail group and therefore able to sell URail passes, likely at higher rates, directly. Can I ask you a question not related to agency? What do you think the immunity statute does with respect to cases in which there's personal jurisdiction? In other words, what I'm concerned about is that your position seems to be in any case in which there is personal jurisdiction, which jurisdiction can be exercised over the foreign state or its agency, there's also no immunity. And if that were the case, why have an immunity statute at all? We know the converse is true. If there's subject matter jurisdiction under the Foreign Sovereign Immunity Act, then there's personal jurisdiction. I'm not suggesting that if there's personal jurisdiction, there's subject matter jurisdiction. No, I understand. My question is, is it your position that in every case in which there is personal jurisdiction, there is an exception to the immunity of the foreign state? No, because the claim must be based upon the commercial activity in the United States, and it must be carried on by the state. Give me an example of a situation in which there was a claim based on commercial activity in the United States in which a United States court wouldn't have personal jurisdiction under the due process clause. I'm concerned that your position is basically, if I can prove personal jurisdiction, I can prove the absence of immunity. And I'm wondering whether Congress really meant that. No, obviously it did not. So, again, can you think of an example where there would be personal jurisdiction but immunity? Given your position in the case, which is that if any part of the transaction occurred in the United States. Sun might be an example of that. Stand close to the mic. I believe Sun might be an example of that. What about the Iraqi case, Tara and Kian? Would that be an example? No, I don't believe so, because in that case the court finally said the issue was formation of the contract in the United States, and there were other tangential issues about were they involved really as a sovereign because of the program that was established in the United Nations after the war. My understanding is that your position with personal jurisdiction ultimately is that the usual personal jurisdiction rules don't even apply to sovereigns, i.e., that there is no international issue, so to speak, for foreign countries. So that personal jurisdiction, isn't that your position? My position is the Ninth Circuit has said that once you have subject matter jurisdiction, you don't have to analyze whether or not there's personal. I'm sorry. I thought you had a constitutional argument or somebody had a constitutional argument that said that foreign countries are not subject to the due process clause for purposes of personal jurisdiction. I think that issue is not resolved yet. It isn't resolved, but I thought you took a position on it. No. The only position I'm trying to take at this moment is that whether the Bandcheck Standard talked about DOE, whether it's necessary to apply that in a case such as this, where we have a pass that is issued under the auspices of the URAIL group through its sales network in the United States. Well, it would help in clarifying that issue, too. Or maybe this is more a question for the other side, but URAIL itself has sold the ticket. Presumably, I mean, your position is it doesn't matter whether URAIL is, how URAIL directly is related to the Austrian airline as long as they're authorized to sell the ticket and are selling it on behalf of the Austrian airline. Correct. And that the DOE problem is a different problem. That's more like an alter ego problem. Which, yes, which may or may not apply in the context of a commercial activity session. I would like to- Can I ask a question, counsel? This is Judge Fischer, over on the screen, wherever the screen may be. You mentioned what I would refer to as the upgrade to the sleeper option. Was that issued in the United States or issued in Austria? That was issued in Austria. And now, on the based upon analysis, you have to establish a duty of care. Is your theory that you could not establish the duty of care solely on the basis of the defendant having issued the upgrade in Austria? No. The duty of care arises when the passenger-carrier relationship is formed. The upgrade requires the pass. So, in other words, you couldn't get the upgrade without having the fundamental pass. Yes, that's correct. All right. Thank you. I'm going to go back to the bar connection referred to by this Court several times. Would it be helpful to me to know more about how the based upon exactly works? I mean, suppose this wasn't a common carrier. Suppose it was a hotel and you had a contract. How does the duty of care matter? Suppose she had just gone onto this railway platform and boarded the train and she was to buy the ticket on the train. Would it make any difference? Based upon, as I understand it means, as far as the Foreign Sovereign Immunity Act is concerned, it's something that she must prove in order to prevail. We have Kirkham and we have Nelson. She must prove the duty of care. And in order to prove that, she needs to prove a passenger-carrier relationship. And the reason she has to prove the duty of care is because you have a negligence claim. It's an element of the claim. An element of the negligence claim. Right. That's what she's asserted, right? Right. So, based upon case law up until this point, and what she must do in order to prevail, and Kirkham, I don't think based upon is an issue here. I think carried on is the issue. But in Sun, it was a little opaque, but those people had to buy their ticket somewhere. It just wasn't really mentioned. That's right. And what we know from that case is this Court has considered promoting the tours in the United States. Even when there wasn't any evidence as to was the $400 paid in the United States? Was any money paid in the United States? We know that documentation went, you know, through the San Francisco office. But we know from the Sun case that promotion by the foreign sovereign in the United States is commercial activity in the United States. The problem with that case was the poor incident wasn't based upon it because he didn't have to prove. In fact, he didn't offer any proof as to whether or not he paid any money in the United States. So, it wasn't based upon the promotion in the United States or the purchase of the ticket in the United States. Barton, it says, you know, actually authority side up the chain, ticket master, the movie theater, scalping tickets. Barton says the sale of the ticket in the United States created jurisdiction. And there you had Pan American had the arrangement with the Chinese foreign authority. And then Pan American had its arrangements with the travel agents. It's the same factual situation we have here. But you can't buy an airline ticket except from an authorized agent because you have to give them an actual name. And I think that was true even in the days of Pan Am. You couldn't use somebody else's airline ticket. You had to go to somebody who was an authorized agent to get the ticket because they would then take your name and vacation and hand it over to the airline. And then if you wanted to change the ticket, you had to then deal with an authorized agent to change the route, to change the date. Sometimes in the old days you could even change the person, say, I'm transferring my ticket to my son or to a friend. But, of course, that's not true anymore. But you always had to deal with an authorized agent. My question about Euro, I don't know whether Euro passes are like that or whether they are more like movie tickets where you just buy them from anybody. And so long as it's a real ticket, they're fine. So long as you show up with a ticket, it's okay. I don't know what the record is. I think the pass says it's non-transferable, I thought. It has to be because otherwise it gives you a certain number of admissions. If you start transferring it around, you're essentially multiplying. Well, there's no doubt about that. But once you start using it, you're stuck with that person. But until the first use, there's no theoretical reason why it couldn't be transferred. Once you start using it, the period starts and the person is locked in. This was a motion to dismiss. Yes. So the question is, are there any allegations in the complaint or is there anything in the affidavit submitted that tells us whether or not this is more like an airline ticket or more like a theater ticket? Your Honor, may I please respond to Judge Kaczynski because there's a paragraph. Your Honor, you're getting some help over there trying to answer my question. And I don't want to lose it, but I don't want to lose the question. I think if you answer Judge Hurst's question, you will be answering my question too. So feel free to answer either, but I think he's trying to help you. Thank you. She's a resident of Berkeley, California at 182 of the record. She's a resident of Berkeley. When she purchased the railway ticket, she was a defendant's agent at URail, an American-based company, URail pass experts. I think we all understand that. And maybe I was trying to clarify the Chief Judge's question, and I guess I failed. The question is, when you buy a URail pass in the United States, is it yours and not transferable to anybody else, or is it more like a movie ticket that I could hand over to Judge Burzon and she could go to the movie? When we look at the pass, and Judge Fischer, I would have to go through the pass completely. I do believe it is not. It says in it non-transferable. Yes. It also says that it has to have a valid passport matching the name of the person who's, I'm paraphrasing, but I'm looking at page 141. And it appears that it's both non-transferable and requires a valid passport to match the name to which it is given. At paragraph 18, although the print is quite fine, it says that the issuing office is merely the intermediary of the carriers. And when I mentioned that in the district court, it didn't seem to... So the answer to my question is, no, this is not a transferable ticket. It's something that you buy in your own name just the way people buy a ticket on Pan Am or the other airlines involved in the cases. Yes. And the allegation is that she bought it from the authorization. Yes. Not she didn't buy it from someone she met on the street. That's not what this case is about. It can't be issued that way because you can see from 141... Where in the complaint is it? I think it's... Well, that's... If that's what you said, it didn't say that. Counsel, this is Judge Gould in Seattle. I think that in the complaint, paragraph 2, it says that the plaintiff bought the ticket through the defendant's agent, URail, and the American company, which is RPE. Yes, Your Honor. So I think the answer to the Chief's question is the allegation in the first paragraph of the complaint. It's paragraph 2 on pages 182 to 183. May I reserve the balance, Your Honor, please? Okay. You didn't spend a lot of time on the real issues. I'm sorry, I didn't... You can reserve your time if you want. I'm just saying that I'm down to 10 minutes. Okay. All right. I'll be happy to do whatever I can now to straighten out any questions about did the URail pass, did the rail pass experts have the authority to issue this ticket? And the other question is... But let's assume all that. Let's assume that they have the authority. There's an agency relationship, et cetera. The issue that you started to talk about, I think, is at the heart of this case, which is this suit based upon a commercial activity. Tell us why this suit is based upon a commercial activity, and in the Sun case, it was not. In this case, Carol Sachs must prove a duty of care. Kirkham, Nelson, the other cases say if duty is an element of the claim, then you need to prove it in order to win. In order to prove it, you need to prove the purchase of some ticket, some contract of care that you need. So in your view, is Sun just a case in which the plaintiff failed to prove that he purchased the ticket in the United States? We don't know if the $400 was paid in the United States. See, I read Sun as saying that sort of like a proximate cause case, if you will, that the accident that occurred later on wasn't really related to his purchase of the ticket. No, actually... Purchase of the tour. The promotion. Yeah. No, actually, it was a wrongful death claim, and the elements of a wrongful death claim were different from the elements of the claim that you're pleading in this case. Right? Sun was about a downing. I don't see that there's a legal distinction. What Sun said was promotion was commercial activity. Standards. What the standards were based upon. Those elements, according to Nelson, those elements of a claim that, if proven, would entail a plaintiff to release under his theory of the case. Wrongful death is duty, breach of duty, and a proximate causation of the death. Counsel, are we applying Austrian right here? Are we applying Austrian law or California law when we do this kind of analysis? Lawrence, our immunity is federal law. Now, as to the question of what's the element of the cause of action, suppose it turned out that, under Austrian law, it didn't matter whether she purchased that. Under the law of reform, that has not been an issue thus far. So we have a... California law is your answer. Yes. Mr. Becker, I have to bring you back to... Counsel, it's such good if I could interject a question on that last point, please. Isn't it the case that the question of choice of law is antecedent to where we are here? In other words, her suit was tossed out based on the FSIA, based on the conclusion of no commercial activity on which the claim was based. And, you know, if that is reversed and it goes back to the district court, wouldn't the district court then have to determine the right rule of law to set the standard? Yes. I'm not sure that the standard for the elements of the cause of action present a choice of law question, because I don't think that there's any disagreement as to what a negligence claim in California means as opposed to in Austria. But certainly the court will have to deal with choice of law questions regarding damages and other things. But I'm... I hate to... If you don't answer my question, I hate to come back to the question I had earlier, but I've read the complaint now, and it doesn't say what you said it says. Have you got the complaint from me? Yes. Paragraph two? It says, Plaintiff is a resident of Berkeley... This I'm reading about on page 182... California, and was a resident of Berkeley when she purchased a railroad ticket from dependent agent, singular comma, URail, and the American-based company, the Rail Pass Express. As best I can construe that sentence, there is no allegation that URail Express is an agent. In fact, it seems to suggest there's one agent involved, and that's URail, and then there's this other company. Where is the allegation that URail, the Rail Pass Express, is an agent? At the time of the filing of the complaint, we didn't have any specific information, because it wasn't... You didn't allege it? I couldn't in good faith allege that URail Pass Express... I'm not asking for the reason. The fact is it's not in the complaint. That's correct. Okay, and there's no... There's a motion to dismiss, so you don't have affidavits or support. So, given that there's no allegation of agency as to the seller of the ticket, why isn't that dispositive of the case? Carol Sachs submitted an affidavit, but I think what's more important is I don't think there's any dispute that the railway ratified the issuance of this ticket. But this isn't a 12B6, exactly. Isn't that right? It's a jurisdictional... Absolutely. And there was evidence. Yes. Okay, so let me get back to my question. Where's the evidence? She pointed to the complaint. The complaint doesn't do it, so it points me to something else. At page 136, where the declarant says, presumably entitled... Who is the declarant? Felix. That's 7 through 9. I'm sorry? 136, 7 through 9. The rail pass agent is maybe, presumably, a sub-agent? And alternatively? Maybe? At that point, Your Honor, there's no way for us to know. I'm not blaming you. I'm just asking where the evidence is. You're presenting us a record on which we have to make a decision. At page... You claim agency, and I'm just asking you for the proof. If it's not in here, I don't really care why it's not. If you want leave to amend, maybe that's something you could get. But the question is really quite narrow. What is the proof of agency? 88 at 21. 88? And she didn't buy it from... I'm sorry, 88 on the record? Yes. Excelsior record? Yes. And who is that fishing? Counsel. Counsel? At the motion to dismiss hearing, yes. He's a witness? No, he told the court that it was purchased from an agent of your record. Was that the defendant? Excuse me, let me just clarify. You're saying that defense counsel conceded that, or was that an argument of plaintiff's counsel? At page 88 of the excerpts, the railway's attorney told the court that she didn't even buy it from the OVB, but bought it from an agent of the URail group. I'm sorry, what line is that? 21 and 22, Your Honor. But also... 88? 88, yes. The paragraph on page 136 was also from the defendant, and it was essentially the same thing. It was saying we're going to presume that it was an agent. The fugue declaration was also from the railway. Yes. Oh, yes. But... I'm sorry. Who is Mr. Bascombino? What's that? Okay. There we go. As you say, you're relying on the statement of counsel? And I'm relying on the ratification that occurred. Didn't the... When they took her money. Didn't the motion to dismiss, I may be recalling it wrong, and I can't find it at the moment. Didn't the motion to dismiss, one of the arguments it made was that this was bought from a subagent rather than a direct agent. Am I correct? Yes. Okay. So there didn't seem to be any dispute about the status of the person or the agency from which Mrs. Sachs bought the ticket. The question was whether it was a subagent or a direct agent. And whether that matters. Right. Okay. But I don't think there was any dispute about that issue below. The question is just really what's the legal consequence of that. I think what is the legal consequence of accepting the benefit of the issuance of the ticket and ratifying the sale. So if there was not an agency to begin with. I don't think there was not. Of course there was. They admitted there was. What's the difference? The error is that the district court, in some people's views, and the reason we're here, is that for that trial and the error, the district court imported the Holy See standard of day-to-day control. And the question in front of us is whether or not that's error. As opposed to actual agency. There's a lot of moving pieces in Doe. One of which is does it even apply to a commercial activity case. And if it does, it does specifically refer to corporations. Doe says what actions of the three domestic corporations are attributable to the Holy See for purposes of jurisdiction. And there weren't any. There weren't any. But here, the action that is attributable to the railway is the sale of this pass, which they agree allowed her to board the train in Austria. That was the act that was attributable. And if you think that Doe applies, we suggest it in the brief. No response in the reply. Let it not be replied retroactively to this case. FANF was the law. FANF is still the law. Actual authority is good enough, irrespective of day-to-day control over a person or a business. Thank you. Okay. Thank you. Good morning. Juan Bas on Braille for OBB. The reason why we don't have clarity is because we're not following the framework of the FSIA. The FSIA has its own definition of agency. Common law doesn't matter. We raised this issue in the district court. The district court didn't catch on. It reached the right decision, but it avoided the initial step. The appellant also missed this point. It's in pages 28 through 30 of the appellant's excerpts. I'm going to ask you just to indulge me for a second, because I want to take you through the statutory scheme. That's a relevant argument. Section 1605A2, the commercial activity section in the first clause, says that the action has to be based upon commercial activity carried on in the U.S. by the foreign state. Now, the FSIA specifically defines what commercial activity carried on in the U.S. by the foreign state means. And this is something that's ignored by the panel and was ignored by the district court. If you look at 1603E, this is what it says. A commercial activity carried on in the U.S. by a foreign state means commercial activity carried on by such state. Again, emphasizing that the foreign state has to be the actor, and it has to have substantial contact to the U.S. And in Nelson, that's how it's- But, of course, ignoring the definition of foreign state, which is in 1603A. I'm getting to that next, Judge. Okay, because it's not just the state. It's an agency or instrumentality. Exactly. Right. Exactly. 1603A, then we turn to that to ask what is a foreign state, according to the Congress, and it includes a political subdivision, an agency, or instrumentality. But it also says, as defined in subsection B, So, the Congress has defined what kind of agency comes within the ambit of a foreign state. What kind of agency has to be that type of actor that comes within the commercial activity exception? So, what does subsection B say? An agency or instrumentality of a foreign state means any entity that, one, is a separate legal person, corporate or otherwise. All right. Well, past experts could be a- comes within the first section because it's a separate legal person, corporate. Number two, it has to be an organ of a foreign state. Well, past experts is not. It has to be a political subdivision. It is not. Or an entity whose majority of its shares are owned by the foreign state. Doesn't- Well, past experts is not. Doesn't subsection B simply define the instrumentalities of the state that are subject to immunity? And that's- As opposed to- as opposed to giving the state itself immunity for acting through an agent in the United States? No. What subsection 1603 does defines what a foreign state is, and the commercial activity exception states that the actions have to be by a foreign state. Yeah, but under your argument, as I understand it, the commercial activity here wasn't by a foreign state because the agency doesn't qualify under subsection B. Exactly. So, therefore, there's no immunity. You know, the only- the only people that get immunity are foreign states, and you're saying it's not a foreign state because it doesn't qualify under B. No. Let me explain that, Your Honor. There's two different issues. The first issue is- Yes. The first issue is whether OBB, the defendant, has immunity. It is undisputed that OBB is an organ of the state, and under the Ninth Circuit's decision in Power X, we have immunity. So the acts of OBB could be imputed to the Republic of Austria. That's one issue. The second issue here is can the actions of well-past experts be imputed to OBB? The problem, of course, is that the state is always acting through agents, right? Suppose it was a person, a person who was selling this. Correct. They wouldn't need their definition either. Suppose that this- if this definition was the total definition of when the state is acting, then if the state has, you know, Mr. Jones selling its tickets for it, but it's selling it directly for OBB, it still wouldn't work. Exactly, and that's what the Supreme Court has said, that that's the entire definition. In that case- So then they're never going to be acting in the United States because they're always going to be acting through somebody. No, they can act through another entity, corporate entity. OBB- But still it's going to act through a person who's going to be its agent. At the end of the day, that person, yes, but the corporate entity, if OBB had sold the ticket to the plaintiff in the United States, there would be activity by the foreign state because OBB falls within the agent definition in the FSIA. My point- But how would they do it? I think Judge Berzon's question is this. Let's suppose that OBB was unwilling to sell any tickets through URail pass or any subagents of URail and instead sent individuals, John Doe and James Smith, to California and they were employees of OBB and they sold these tickets. Would that be commercial activity in the United States, even though those individuals don't meet the definition that you just read us? Yes, because you would be suing OBB. We are suing OBB and they're saying that this entity was acting on behalf of OBB just as James Smith or John Doe would have been. Yes, but if it's an entity, it has to fall within that definition. So your position is that this defines not simply what a foreign state is, but all the agency relationships that a foreign state can have. This defines what types of agents can be considered to be foreign states under the commercial activity exemption. Okay, but if the agent is not considered a foreign state, under your argument, then it has no immunity. Am I correct? No, that's not correct. If the agent is not considered a foreign state, the agent's activities cannot be imputed to the foreign state. Where does it say that in the statute? It says it right in the statute because the statute says in 1605A2, the commercial activity exemption says it has to be based upon activity by the foreign state. And then the statute defines who the foreign state is. Do you have any authority for this theory of yours? Yes, the Supreme Court's decision in Summantar from 2010, which dealt with the issue of whether government officials, individuals, come within the FSIA's definition of an agent. The Supreme Court said no, because they do not fall within 1603B's definition of an agent. How does the government do anything if it can't do it through government officials? You can do it through government officials, and you do through government officials, but that's not the issue. The issue is how does a government instrumentality or an agency become immune under the FSIA? Well, there's one case clearly rejects that theory, and that's Barkin. The Supreme Court, the issue in the Supreme Court case. Did the answer no, you said? No, because it doesn't address that definition. It didn't authorize the Pan American to act as an agent for the Chinese airlines? See, what we're confusing is we're confusing liability with immunity determination. And if I could have one second here to explain this. You first have to come within the commercial activity exception. Let's assume that rail pass agents could qualify as an agent under the FSIA, okay? What happens next? Then you move on to the basic analysis, where the Supreme Court said in order to ascribe or impute the activity of the agent to OBB, you either have to come under the common law principles of agency, substantial contact or an alter ego relationship. That's the second part of the analysis. And then you can defeat that presumption of immunity that arises. But it's a two-step analysis. You first have to be the type of agent that can be an actor of the state under the FSIA. And if you are, then you go on to the basic analysis to determine whether you can pierce through the immunity. So in your view, the D.C. Circuit and the Second Circuit opinions that deal with the airline tickets, Pan Am and otherwise, are incorrectly decided? No, because in both of those cases, the defendants conceded the first step of the analysis. Incorrectly? Incorrectly, in your view. I don't know the facts of those cases. Well, we do, and they're in the opinions. The tickets were sold through travel agencies in the United States, which I don't think is the case. Maybe their lawyers should have made that argument, but I don't think, you know, that whether that's the case or not really matters to us. So let's go back to Judge Reinhart's question. Can you identify a case for us in which this argument has been successful? I know you derive it from a Supreme Court case, but can you identify a case in which somebody has made this argument under similar circumstances? No, that's the one. If this appeal presents a question of first impression, that's it. The Supreme Court case that you mentioned, the 2010 case? Yes. The issue there, I assume, was whether the individual government official was himself entitled to immunity. When he was being sued, not the government. Everyone was being sued. All right, but the question was whether the individuals were entitled to governmental immunity. Correct. That's the opposite question from the one here. Here, they're suing the government entity, and the question is whether they're entitled to rely for purposes of that suit on things that a subagent did. But they're not trying to sue the subagent, and the subagent is not claiming immunity. Yes, but we're talking, now we're mixing, again, liability with the immunity determination. What they're trying to do is they're trying to say, we are going to, the subagent was the agent of OBD under the FSIA's commercial activity exception. I'm saying, no, they weren't, because they don't fit the definition of an agent under the FSIA. Counsel, could you explain, then, how you ever get to the common law issue of agency? If you first have to clear the hurdle that the actor has to be an organ of the state, all of the elements that you've listed for us, why would you ever get to an agency? You wouldn't need to, because by definition, those within the first category are automatically agents of the state. They are the state. No, that's not correct, with all due respect. There's a second step. So, let's assume that, let's look at the Holy See case as an example. You have the Catholic Church Archdiocese gets sued, and the Holy See gets sued, and the plaintiff says, we want to impute to the Holy See the activity of the Archdiocese. Now, in that case, there was no debate about this first issue, because the Archdiocese clearly falls within an agency of the Holy See under the FSIA. But that wasn't a commercial activity case, was it? No, but it's still the same first step, and this is what happens to answer Judge Fisher's question. So, what happens then? Are we done or are we not done? You're not done. What happens at that point, according to the Supreme Court's decisions, and this goes from Nelson all the way back to Bellinger, a presumption of immunity arises and a presumption of separateness. So, you have a presumption of separateness between the Archdiocese and the Holy See. That's when Banco de Cuba, the BANCEC factors, come in, and that's when the common law comes in. Then you look at the BANCEC factors to decide whether that presumption of immunity should be defeated or not, and it can be defeated by looking at common law agency or common law of alter ego, et cetera. In this case, neither one of those would apply. Even if we could get to that point, they don't apply because you don't have extensive control and there was no alter ego relationship. OBB wasn't even aware that the UREL past experts existed. Suppose this wasn't UREL past experts. It was UREL. Does that make a difference? Suppose she borrowed directly from UREL. It would not make a difference because the majority of the shares of UREL are not owned by OBB. OBB is one of 31 owners of UREL, so you could not impute the activity of UREL. All right, so let's go back to the question. Suppose she bought it from John Doe, who was an employee of OBB selling the tickets in the United States. What difference would that make? He's still a separate person who's an agent, and if he doesn't meet the definition of agency B, but she doesn't, then they're still not bad. Is that your position? No. She's buying it from OBB. But that's because he said it's agent, right? Why is she buying it from OBB? Because John Doe is an agent of OBB. Okay, Your Honor, with all due respect, you're thinking of agency in the way the term is used under the common law. Right. The SSIA doesn't use it that way. The SSIA has its own definition. Okay, so let's take B. He's a separate legal person, and he's not an organ of a foreign state or a majority of whose shares, but he's a person, so he doesn't meet the definition. He doesn't fit. Right. So, therefore, he's not an agent, and they're not bad playing this. Is that what you're saying? No, that's not what I'm saying, because the contract is entered into between OBB, and would be entered in your example between the plaintiff and OBB, and so OBB is the actor. You're making a distinction between an agent and an employee. Right. This is just an employee. That's what I was trying to say when I said you're thinking of agency in the common law. And this contract wasn't entered into with OBB? No. So let me understand, because I'm having difficulty with your argument. Let's go back to Judge Berzon's question. OBB is a foreign actor for purposes of this, correct? It's the railway of the Austrian Empire. Right. Is it agency of the? It is clearly an agent or an organ or an instrumentality under the FSA. So do you agree that OBB meets the definition of agency or instrumentality of a foreign state? Yes. Okay. OBB says the best way to sell tickets in the United States is to authorize, pick your travel agency, the all-American travel agency to sell tickets. And it says to the all-American travel agency, sell our tickets to the United States. You're authorized to do so. We have an arrangement. We'll pay you a commission. OBB is then immune from suit under the FSIA in your view? I'll answer your question, but I'd like to talk about what reality is. Reality is that OBB has a website. It never involved reality. So answer mine first and then tell me about reality. All right. Well, if the agent did not – if the agent does not come within the definition of the FSIA, you cannot impute that agency. It doesn't come within. It doesn't. It plainly doesn't. No. It's not owned by a foreign state. It's an American. I suppose they sell that – I suppose it wasn't one of these URL things which in a little bit, I suppose it was an airline ticket for a certain place at a certain time. All right. And they buy the ticket and the United Airlines or Air France is now entered into a contract, as in not with the person who's buying the ticket. Suppose they then – the person shows up to get on the plane and they say, we're not going to let you on the plane. All right. We're breaking the contract. There's no way to sue them, you're saying, because they didn't sell it directly. You would have – you can sue them over there. You know, you can sue them over there. But you can't sue them here because even though there was a contract entered into on their behalf by an authorized agent of theirs here, and that's the way they're doing business here, and there is a contract that's binding them here, they still weren't doing business here. If they own the agent, they can't be sued. No, they don't own the agent. They don't own the agent. Not the way Congress laid out the statute. Suppose they explicitly ratified the actions of railcass experts. It doesn't matter. Ratification, contract of carriage, all of these theories would create exceptions that don't exist in the FSIA. And the Ninth Circuit has already said, we are not going to create exceptions that don't exist. And you said it in the Panov versus Indonesia case. We assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose. We are not going to imply exceptions. So let me ask you this question again in a different way. Let's assume the government of Austria manufactures poisoned food and sells it in the United States through grocery stores. No immunity for the government under those circumstances? You haven't given me enough facts because I don't know how they are selling it. Exactly the way I described before. They have a government food agency that says the best way to sell this poisoned food in the United States is to contract with a bunch of distributors in the United States who will then sell it to grocery stores. Consumers eat it and they die. Under the FSIA, there would be immunity. Now, let me get to the point I wanted to get with you, Judge. Normally, well, the OVB sells tickets through the Internet in the United States. It doesn't matter because that's not what the plaintiff chose to do. But if the plaintiff had bought the ticket through the website of OVB in the United States, there would be commercial activity by OVB. Hank, would you then say just to change the subject? There would be no immunity. To change the subject for a minute, would the accident then have been based on commercial activity in the United States? That's the second point I want to get to. I still think no. So let's get to that point, basic point. I think Nelson versus Saudi Arabia is dispositive. Let's talk a second about what happened in Nelson. So in Nelson, you have an American. Saudi Arabia comes to the United States, recruits them here, signs a contract here, and he goes to work at a Saudi hospital. He's basically a whistleblower. Saudis detain him. They torture him. He comes back. He sues. So his argument is, I'm suing in negligence. I'm suing for negligent failure to warn me that I could get tortured in Saudi Arabia. And you recruited me here. You promoted here. You signed a contract here. There's commercial activity in the U.S. The Supreme Court says no. You know, the Supreme Court calls the negligent allegations, the negligence, the whole theory that there was a duty, it calls it a semantic ploy and rejects it. You know, what the Supreme Court says is you have to look at the gravamen of the action. I hate to interrupt this train of thought, but I want to go back just one step to your earlier argument. Okay. Just to tie up something. Opposing counsel quoted a part of the transcript where I guess it was you. I didn't recognize the name. I don't read. This print was sort of small. Anyway, you were quoted as saying there was agency. And maybe I just want to give you a chance to talk about that and then tell us what that is. I'm happy to clarify it because I think it's clear. I lost the page, too. I don't have it, but it really. It wasn't you the first time. It was you the second time. I represented the defendant the whole time, so it wasn't me. Mention two names, one in argument and then one, another name you raised your hand. It's me, Basombrio, same person. Let me explain what I said. There's no evidence. The way the burden of proof works is if we can show that OBB has immunity, then the burden shifts to the plaintiff to show that an exception applies. So they have never shown any evidence or submitted any evidence about what's the relationship, if any, between well-passed experts and the Europass. So the way we've addressed it is we don't know either. OBB doesn't even know that they exist. So what we have said is maybe they were some sort of sub-agent because they were able to sell the railway pass, so there has to be some sort of agency relationship. But we're referring to agency in the common law sense of the word. That doesn't mean that we're admitting that there's an agency as defined in the FSIA for purposes of the commercial experience. But you're not contesting for purposes of this lawsuit that they were a sub-agent in the common law sense. We're contesting it in the sense that we do not know that that's true. There is an allegation of that that you accept as true for purposes of this jurisdiction. We do not accept that as true. We're arguing, though, assuming that that's true, that they were some sort of sub-agent. You still don't get there where you want to go. That's all we can say. How could they not be a sub-agent? I mean, I guess there's no way to sell this ticket unless you're a sub-agent. I cannot speculate. That's no burden of proof to show who they are, what they do, and how they did it. They didn't do any of that. It's not my job to make those proofs. Just to understand, I've had the page now. It's page 88. Okay. And what you are telling us, just, you know, if I have an opinion or something, and I want to refer to this, I just want to make sure I understand what you're telling us you are saying here, what this stands for. Yeah. What I'm saying is that... You're looking at the same page, right? Yeah, yeah. And what does it say exactly? She didn't buy it from OBD, but bought it from an agent of the Europass. Of the Eurogroup. Of the Eurogroup. As you have heard from my friend, that is his opinion, that Eurogroup would have no liability. What I'm referring to there is that they have alleged that it's some sort of agent, or at least that's what he was arguing at the hearing, and I'm saying maybe they are. Maybe they are a sub-agent. We just don't know. Okay. But that's their burden of proof, and they never presented any evidence. I don't want to make a big argument. I just wanted to understand, since you are quoted here saying that, I just wanted to give you a chance to... I'm referring to agents in the normal sense that we use it, not in the sense of what I cited in the FSIA, an agent within the commercial activity exception. That's defined in the FSIA. Just to be clear, this is not a concession on your part. Right. You did not mean as a concession that this is an agent for purposes of the FSIA. No, no. And I don't think I read it like that. Whatever you said is here, despite what you may say now. Yes. Okay. Whatever the district court had before it, when it rules, it had before it, not in a later explanation. Oh, sure, sure. And I don't think that the district court ever thought that we were conceding any agency relationship that matters for the FSIA. It held otherwise. So, going back to the based upon... Well, if we want to talk about this fascinating subject that we spent half this argument on, what does it mean when someone says, I bought it from the agent and someone else, collectively, not alternatively? But if they bought it from your agent and he had a standby person there who isn't your agent and they sold it to him, and your agent was one of the people who sold it to them, how does that relieve you of any responsibility because the agent sold it jointly? It's not my agent because... Well, no, no, let's assume it's your agent. Let's assume it's my agent. Yes. Okay. Then I have to extensively control that agent under the basic decision... I'm not asking that question. ...to be responsible. I'm not asking that question. I'm just asking whether it changes things because your agent didn't sell it because he sold it jointly. If somebody else sells it, it makes it even less likely... No, no. He sells it. Right. He sells it and he has with him someone else. Right. And they sell it. Let's assume... If I don't control that other person, then they're not my agent. Counsel, let me ask you one question about the based on piece of this, which hasn't gotten very much attention. Let's assume for purposes of this question that OBB sold a ticket directly and this other issue isn't in the case. In what circumstances, in your view, would an injury to the passenger be based upon the ticket-buying relationship to bring it within the commercial exception? Okay. The ninth circuit, like every other circuit, has repeatedly held that if all you can show is that the plaintiff is an American, it's not good enough. Whether you're talking about commercial activity, tort exception, expropriation, anything else. That's a negative. What would the person have to show to come within the commercial exception? Or is your answer that when there's a near carriage relationship like this, then they can never show up? The tort has to happen in the U.S. is what the FSA says. If you look at the tort, the tort has to happen in the U.S. The only way you can have jurisdiction under the tort exception, under the FSA, is if the tort happens in the U.S. Our case law does have this language that says if it's a necessary element of the cause of action, then it's based on. Nelson kind of leaves that question open, as I read it. It says if everything about it, it leaves out whether all the elements have to be within the commercial exception or only one of them. But our case law is clear about that. Is that not true? No, because let me ask you this question. I'm asking you a question. I'll say no, that's not correct. What Nelson said was you've got to look at the gravamen of the action. And the gravamen in Nelson was tort. Where does Nelson say that? Nelson, as I understood it, had a footnote saying we're not saying that it has to be, whether it has to be one of the elements or all of the elements. And then we've answered that question and said one of the elements. Yeah, pages 356 to 357 in Nelson is where the Supreme Court discusses, makes this argument. This is what they say. You have to look, basically, what is the lawsuit about? And in that case, the Supreme Court said this lawsuit is about the torts that took place in Saudi Arabia. The preceding commercial activity in the United States. Has nothing to do with it. But here it doesn't have nothing to do with it. It didn't say it doesn't have anything to do with it. It said that's not the gravamen of the case. That's not the heart of the case. And that's the same here. The heart of the case is the alleged tort in Austria. The plaintiff alleges that there was improper design of the loading platform. We are alleging she ran and tried to jump into a moving train. Well, it doesn't matter who's at fault. That's way down the road. No, but that's the dispute. It's a tort dispute that occurred in Austria, not in the United States. So under Nelson, it's not based upon the activity here. I will present it this way. The plaintiff could be a Peruvian plaintiff that bought this ticket in Peru. That wouldn't change the analysis at all. The footnote that I was referring to in Nelson says the following. We do not mean to suggest that the first clause of 1605A2 requires that each and every element of a claim be commercial activity by a foreign state. We do not address where the claim consists of both commercial and sovereign elements. We do conclude that where a claim rests entirely upon activity, sovereign and character, that jurisdiction will not exist regardless of any connection the sovereign acts may have with commercial activity. So I understand that to mean that where here there is an important element or an element that does rest on the commercial activity, hypothetically for present purposes, that Nelson doesn't answer that question, but our case law ultimately does. Now, what's wrong with that? What your case law says, and this is the Terentia case. So your reading of Nelson is wrong. No. Because Nelson specifically didn't answer the question. No. Nelson says, you look at the gravamen. And in that case, the Supreme Court said it doesn't matter where that person was contracted to come to Saudi Arabia from. Because for that particular cause of action it didn't matter. But for another cause of action it might matter. No, here it doesn't matter that this ticket was purchased in the United States or China. She could still sue for negligence. The duty of care is not dependent on the location of the purchase. And that's what you have said in Terentia. And this is what I want to close with. This is the 2012 decision issued eight days after sex. And it's under the first clause. This is what the Ninth Circuit says. In that case, Iraq is being sued for breaching an oil contract. And the issue is whether the contract was signed in the United States. And giving rise to the obligations, contractual duties, because it was signed here. This is what the Ninth Circuit says. Even assuming that Iraq signed the subject contract in New York. Quote, the legal argument is wrong. Execution of a contract in the United States alone, without more, is not sufficient to satisfy the first clause of 1605A2. The mere happenstance that a contract is executed at a location within the physical boundaries of the United States, by itself is not sufficient to constitute a significant activity or a substantial contact for purposes of 1605A2. And then it notes, and by the way, nor did the contracts require Iraq to undertake any activities in New York. So it cannot be based upon, because there's also no substantial relationship to the claim. Thank you. Thank you. If you're out of time, we'll give you a couple of minutes for a bottle if you should take it. One of the reasons we asked for a rehearing. Two minutes, I said. Thank you. Is because if the Banchik standard is applied and the history of international transportation, whether it's railway, airline, falls within the scope of DOE, then in the future, anybody purchasing a ticket from a travel agent for travel on a foreign carrier, will not have access to United States courts. Well, that's Congress's choice. If that's what Congress said, you can go back to Congress. What's your answer to opposing counsel's statutory arguments? Look, the statute defines agent. It defines foreign state. And however you define the sales agent here, they just don't fall within the definition. What's your answer to that argument? I don't have an answer, and I think that the argument is inconsistent with Banchik, and I think it's inconsistent with DOE, because DOE is now applying an agency standard, which, according to counsel's argument, would be a decreation of an exception. I think as far as radical counsel goes. You don't have a statutory answer to the statutory arguments. No, I just rely on the case law. The case law has said. Counsel? That's Judge Fisher over there. Yeah, I'm sorry, but I'm just looking at the statute, and five directs one to, in a tort case, to look at the agency elements that counsel was referring to. Now, that may be a-I know you're not seeking exception under the tort exception, but at least there is a link for the tort section to the kind of agency analysis counsel was referring to. And it's omitted as far as commercial activity is concerned, and that is the basis for jurisdiction, relying on Kirkham. One last point, and that is, at the end of the day, the court still has discretion to say, would it be unfair to let the OBB reap the benefits from all of this international network of sales, make the money, and then not be subject to jurisdiction in the United States? Just real quickly, would there be any reason to let you amend the complaint, or would you have any interest in amending your complaint? I brought that up, yes. If it's necessary, it pleases the court. What would you allege? I would allege that under the circumstances, there wasn't actual authority. There was agency. And also, none of the courts have discussed whether or not you must allege the second prong of band check. I never had a chance to do that, because we didn't find out that Doe was an issue in this case until the district court issued its ruling. What about this statutory argument that you made today? Did you understand that argument to have been made before, and have you responded to it in writing? How would you like to? It's limited to tortious activity, even though there's a tort here. I understand that. It was based on the definitional sections of 1603, and it relies on the language having to do with commercial activity carried on in the United States by a foreign state, and it was a read-through of this definitional section, which I don't remember seeing in the briefs. Maybe it was there, but I don't remember having responded to it. I'd like permission to respond to that. Counsel, if you were to amend your complaint, what amendment would you say that says that the call for amendment is limited to tortious activity, and the element of call for amendment? If granted leave to amend, I believe that based upon the pronouncement in Kirkham, one of our district courts recently has referred to Kirkham heirs as Zang heir, or Zang versus heir China. What would you allege? I would allege the facts. The facts I would allege are that the rail pass expert was a sub-agent of your rail group, that by reason of the authorization given to the rail pass experts, an agency existed between the railway and the rail pass experts, that the railway created an agency by ratification when they accepted the benefits of the contract that was entered into between the rail pass experts and Ms. Sachs. What does that have to do with the permit in the contract? I need to show that there's commercial activity in the United States. The based upon part is she must prove the purchase of the ticket in the United States. I would also allege that it would be unfair not to disregard the separate status of the rail pass experts in accordance with the second prominent ban check. Thank you. The case is argued and will stand submitted. If we need further briefing, we'll issue an order. We're adjourned.
judges: Kozinski, Reinhardt, O'scannlain, Silverman, Graber, Wardlaw, Fisher, Gould, Berzon, Rawlinson, Hurwitz